# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **JIMMIE G. WILEY,** | |
| **Plaintiff,** | **No. 12 C 9482** |
| **v.** | **Magistrate Judge Mary M. Rowland** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,**[1] | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jimmie G. Wiley filed this action seeking reversal of the final decision of the Commissioner of Social Security (Commissioner) denying his application for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 *et seq*. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a motion for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security and is substituted as the proper defendant in this action. 20 C.F.R. § 422.210(d) ("Where any civil action [against the Social Security Administration] is instituted, the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant.").

2d 973, 976-77 (N.D. Ill. 2001).[2] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq.* The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on August 16, 2010, alleging that he became disabled on August 30, 2008, because of back injury, diabetes, high cholesterol, and high blood pressure. (R. at 49, 83). The application was denied initially on October 1, 2010, and upon reconsideration on December 23, 2010. (R. at 49). Plaintiff filed a timely request for a hearing and on December 6, 2011, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (R. at 49). The ALJ also heard testimony from James M. McKenna, M.D., a medical expert (ME), and Thomas F. Dunleavy, a vocational expert (VE). (R. at 49). Juanita Wiley, Plaintiff's wife, was present at the hearing, but did not testify. (*See* R. at 3).

The ALJ denied Plaintiff's request for benefits on January 9, 2012. (R. at 49-56). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since August 30, 2008, the alleged onset date. (R. at 51). At step two, the ALJ found that Plaintiff's diabetes mellitus, diabetic neuropathy, degenerative disc disease of the lumbar spine, and obesity are severe impairments. (R. at 51). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (R. at 52).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and determined that he retained a light level residual functional capacity (R. at 54) and could perform light work as defined in 20 C.F.R. § 404.1567(b) except that "[Plaintiff can] never climb long ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, crawl or climb short step ladders, ramps or stairs; avoid concentrated exposure to extreme cold or heat, vibration or unpredictable moving machinery; and avoid all exposure to unprotected heights." (R. at 52). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is unable to perform any past relevant work as a pipefitter [DOT #862.281-022] and plumber [DOT #862.381-030]. (R. at 55). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including occupations such as general hardware sales [DOT #279.357-050], cashier [DOT #211.462-010], cafeteria attendant [DOT #311.677-010], and assembler [DOT #739.687-030]. (R. at 56). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (R. at 56).

The Appeals Council denied Plaintiff's request for review on October 10, 2012. (R. at 63-68). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

# III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing 42 U.S.C. § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is

weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. MEDICAL EVIDENCE

On April 4, 2007, Plaintiff was involved in a motor vehicle accident. (R. at 53, 246). That same day, Plaintiff received emergency treatment at Edwards Hospital in Naperville, Illinois. (R. at 246). He was then transferred to Rush-Copley Medical Center in Aurora, Illinois. (R. at 246-47).

Beginning September 18, 2007, Plaintiff was seen at Rush-Copley Medical Center, primarily by Dr. Chen. (R. at 377, 379-406). On September 18, 2007, he had an MRI of the lumbar spine without contrast which revealed degenerative changes from T12 to S1 with mild foraminal and canal stenosis. (R. at 383, 453). On February 4, 2008, an exam revealed that Plaintiff was in no medical distress. His gait was stable with no limp; cranial nerves II through XII were intact; motor strength was 5/5 throughout; and straight leg raise (SLR) was positive on the left at 45 degrees

and 75 degrees on the right. (R. at 453). Starting in February 2008, Plaintiff had lumbar transforaminal epidural steroid injections in the lumbar spine performed by Dr. Chen. (*See* R. 387). The injections were performed on February 4, 2008 (R. at 389); February 25, 2008 (R. at 392); March 24, 2008 (R. at 395); April 21, 2008 (R. at 398); and July 3, 2008 (R. at 401). Initially the pain decreased. (R. 392, 395). On May 6, 2008, an EMG-NCV revealed mild but suggestive findings of left L4-5 radiculopathy. (R. at 377). On September 25, 2008, due to his failure to improve with the epidural steroid injections, Plaintiff underwent a percutaneous lumbar disc decompression at left L4-5 and L5-S1. (R. at 453).

On October 31, 2008, Plaintiff had a follow up MRI of the lumbar spine. (R. at 377, 384). The MRI scan showed minimal interval progression of degeneration changes; L4-5 circumferential bulging of the disc with moderate to severe right foramina, moderate left foramina and mild canal stenosis, slightly progressed since previous exam; and L5-S1 circumferential bulging of the disc with moderate bilateral foramina stenosis – findings having progressed slightly. (R. at 384). On November 12, 2008, an EMG revealed numbness over the medical aspect of the left foot and lateral aspect of the left leg. (R. at 569). The examining neurologist opined that the results were indicative of a mild to moderate sensorimotor, predominantly motor peripheral neuropathy affecting the left lower extremity. During the physical exam the neurologist noted that pinpick sensation was impaired distally over the feet. (R. at 569). He opined that radiculopathy could not be ruled out as paraspinal muscles could not be adequately tested. (R. at 569).

On October 30, 2010, Plaintiff was involved in a second motor vehicle accident. (R. at 32, 594). X-rays of the lumbar spine from Rush University Medical Center following the accident show mildly decreased vertebral body height at the posterior L5 vertebral body (R. at 611), and no swelling of the lower spine. (R. at 610). The examining physician opined that the claimant had lumbar sprain and strain and discharged him from the emergency room. (R. at 613). Plaintiff states that as a result of the motor vehicle accidents he has significant back pain and is unable to work. (R. at 32, 377). [4]

### Examining Physician, Dr. Malik

On November 6, 2009, William C. Malik, M.D., an orthopedic surgeon, examined Plaintiff for the Plumber's Union. (R. at 377-78). He noted a limited range of motion. (R. at 377). Dr. Malik opined that Plaintiff has degenerative lumbar disc disease that was asymptomatic prior to the April 4, 2007, motor vehicle accident, and that Plaintiff was "totally disabled" from the job of plumber/pipefitter. (R. at 378). Dr. Malik noted that no functional capacity evaluation had been done, but that Plaintiff retained the ability to perform either sedentary or light work. (R. at 378). The ALJ afforded Dr. Malik some weight.

### Medical Expert, Dr. McKenna

[4] On March 9, 2009, Bharati Jhaveri, M.D., a non-examining medical consultant issued a physical RFC report indicating Plaintiff could perform light work. (R. at 551-558). On January 28, 2010, Charles Kenney, M.D., a medical consultant, affirmed the initial determination. On September 30, 2010, prior to Plaintiff's second automobile accident, Dr. Lenore Gonzalez, a medical consultant, concluded that Plaintiff was capable of sedentary or light work activity. (R. at 453). On December 21, 2010, Marion Panepinto, M.D., affirmed. (R. at 472). The ALJ afforded the state agency medical consultants' physical assessments little weight. (R. at 54).

James McKenna, M.D., certified in internal medicine, opined, after reviewing all pertinent medical records, that Plaintiff could perform a range of light work. (Tr. 13-14). He testified that Plaintiff had a BMI of 33 (R. at 6); his MRIs showed a clear progression of impairment from 2007 to 2008 (R. at 6-7); the 2008 EMG showed diabetic peripheral neuropathy, despite surgical decompression at L4/5 and L5/S1; and that Plaintiff's ongoing symptoms continued in 2010. (R. at 8). Dr. McKenna opined that Plaintiff's impairments limited him to light work, restricting foot control use to "occasional to frequent" due to diabetic neuropathy. He restricted Plaintiff to only "occasionally" climbing short step ladders, ramps or stairs, and restricted Plaintiff from "even moderate exposure to vibrating tools, equipment, machinery, or vehicles" and concentrated exposure to unpredictable moving hazards, such as machinery with robot arms or forklifts. (R. at 14-15). The ALJ adopted the opinion of Dr. McKenna. (R. at 54).

**Treating Physician, Dr. May**

Between March 17, 2010, and November 12, 2010, Plaintiff saw Percy May, M.D., a primary care physician, at the May Medical Center on a monthly basis for back pain. (R. at 411-445, 467). Dr. May recommended exercise at each examination. (*Id.*). On November 5, 2010, Plaintiff's examination by Dr. May showed negative straight leg raising, bilaterally, tenderness on palpation of the lumbar spine, reduced range of motion, and abnormal squatting and heel walking, with no sciatic notch tenderness. (R. at 465-66). Dr. May recommended a regular exercise program and physical therapy as directed. (R. at 466).

On November 8, 2010, Dr. May completed a Lumbar Spine Medical Source Statement. (R. at 623-626). (R. at 370). The opinion, based on Plaintiff's back swelling and "left straight leg raise positive," (R. at 623), limited Plaintiff to sitting and standing a total of less than 2 hours in an 8-hour workday. (R. at 624). Dr. May noted that Plaintiff was likely to be "off task" 20% of a typical workday. (R. at 626). On November 12, 2010, Plaintiff had a follow-up with Dr. May. (R. at 467). Dr. May noted that plaintiff "has some improvement of his back pains, [but] is still sore all over." (R. at 467).

## V. DISCUSSION

Plaintiff raises the following arguments in support of his request for a reversal and remand: (1) the ALJ improperly analyzed the medical evidence in assessing Dr. May's opinions; (2) the ALJ improperly assessed Plaintiff's credibility; and (3) the ALJ's RFC determination was improper.

### A. The ALJ's evaluation of Dr. May's opinion is not based on substantial evidence.

Plaintiff contends that the ALJ improperly rejected the opinions of his treating physician, Dr. Percy May. (Plt's Br. at 9). By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evi-

dence." 20 C.F.R. § 404.1527(c)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a non-treating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010), and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

Under the circumstances, the ALJ's decision to give Dr. May's November 8, 2010, opinion "neither controlling nor great weight" (R. at 54) is legally insufficient and not supported by substantial evidence. First, the ALJ found "[t]he undersigned is precluded from affording [Dr. May's] opinion controlling weight under the regulations as it is inconsistent with both the opinions of the medical expert and the State agency reviewing physicians." (R. at 54). This is an incorrect statement of the law. There is no rule requiring rejection of a treating physician's opinion because it differs from a non-treating physician's opinion. The fact that these sources came to a different conclusion than Dr. May is not a sufficient reason to reject the treating source's opinion. *Gudgel*, 345 F.3d at 470 ("An administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evi-

dence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."); *see also Nimmerrichter v. Colvin*, 4 F. Supp. 3d 958, 970 (N.D. Ill. 2013) ("the non-examining medical expert's opinion alone cannot serve as a reason for rejecting the treating [physician's] opinion").

Second, the ALJ asserts that Dr. May's opinion "lacks medical evidence support." But as Plaintiff argues, the ALJ ignores several pieces of medical evidence in the record indicating that Plaintiff was limited by ailments in his back. Specifically, physical therapist Amy Brown, MPT, noted a reduced cervical range of motion and reduced upper and lower extremity in strength (R. at 516, 522); an MRI performed at Rush-Copley Medical Center indicated lumbar disc bulges and/or foraminal stenosis at multiple levels (R. at 383, 384); a cervical spine X-ray at Edward Hospital showed mild disc space narrowing at C4-C5 and C5-6 with anterior osteophyte formation (R. at 507, 509); physical therapist Jason Taylor noted positive straight leg raise, decreased flexibility, limited strength and lumbar motion (R. 479, 560); Dr. Chen at Rush-Copley Medical Center noted unstable toe walking, due to left lower extremity weakness, and positive straight leg raise (R. at 387), and a decreased sensation in the lateral aspect of the left thigh and the sole of the left foot (R. at 395); Dr. Chen also noted, based on an EMG report, impaired pinprick sensation distally over the feet, prolonged distal motor latencies of both tibial nerves, with severely reduced amplitudes, and no response on proximal neural stimulation, and reduced velocity in the sural nerve on the left (R. at 569); and Dr. Malik noted a limited range of motion (R. at 378).

The ALJ concludes that "there is no indication in the file by way of objective medical evidence, clinical findings, or even treatment recommendations from either this physician or any other physician of record . . . to suggest that such limitations [described by Dr. May] are even warranted" (R. at 54), without addressing the medical evidence and assessments of Dr. Malik, Dr. Chen, medical notes from Edward Hospital, and the observations of the physical therapists. Although the ALJ is not required to mention every piece of evidence in the record, *Rice v. Barnhart*, 384 F.3d 363, 370-71 (7th Cir. 2004), his failure here to evaluate any of the evidence that potentially supported Plaintiff's claim "does not provide much assurance that he adequately considered [Plaintiff's] case." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006). The ALJ provides no "good reasons" for discounting the treating physician's opinion, other than a legally insufficient conclusion that it is inconsistent with non-examining physicians' opinions and an unsupported statement that the opinion lacks "medical evidence support." (R. at 54). The ALJ failed to build a "logical bridge" between the facts of the case and the outcome. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). Thus, the Court is left without the ability "to trace the path of [the ALJ's] reasoning." *See Scott*, 297 F.3d at 595 (internal citation omitted).

Further, Plaintiff contends that even if Dr. May's opinion was not entitled to controlling weight, it was entitled to more than the limited weight afforded to it by the ALJ. (R. at 54). A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be enti-

tled to deference. Social Security Ruling (SSR) 96–2p.[5] Ordinarily, it will be afford-

ed "great weight." *See* SSR 96–2p. *See generally* 20 C.F.R. § 404.1527(c) (detailing

factors considered in evaluating weight given to a medical opinion). The following

factors must be considered to determine the appropriate weight to which the opin-

ion is entitled: (1) the length of treatment and frequency of examination; (2) the na-

ture and extent of the treatment relationship; (3) the opinion's support by medical

evidence; (4) the opinion's consistency with the record as a whole; and (5) the treat-

ing physician's specialization. 20 C.F.R. § 404.1527(c)(2)-(5); *see also* SSR 96–5p ("In

evaluating the opinions of medical sources on issues reserved to the Commissioner,

the adjudicator must apply the applicable factors" in 20 CFR 404.1527(c)). *See*

*Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) ("Even when an ALJ decides

not to give controlling weight to a treating physician's opinion, the ALJ is not per-

mitted simply to discard it. Rather, the ALJ is required by regulation to consider

certain factors in order to decide how much weight to give the opinion.").

   On remand, the ALJ shall reevaluate the weight to be afforded Dr. May's opin-

ion. If the ALJ finds "good reasons" for not giving Dr. May's opinion controlling

weight, *see Campbell*, 627 F.3d at 306, the ALJ shall explicitly "consider the length,

nature, and extent of the treatment relationship, frequency of examination, the

physician's specialty, the types of tests performed, and the consistency and support-

---

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (internal citations omitted); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

ability of the physician's opinion," *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009), in determining what weight to give Dr. May's opinion.

**B. The ALJ's credibility determination is not supported by substantial evidence.**

An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft*, 539 F.3d at 678. In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("[T]he administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support a claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other rele-

vant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p.

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss*, 555 F.3d at 561. The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

The ALJ found Plaintiff's statements not credible as follows:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The alleged limitations are not supported by the objective clinical findings in the medical records. His activities of daily living are inconsistent with his complaints. Although he alleges that he is unable to engage in his past work, due to his back injury, he also testified that he had started his own plumbing business but closed the business when he learned it would affect his union pension.

(R. at 53).

Plaintiff contends that the ALJ used meaningless boilerplate language to discredit his statements, which resulted in result-oriented decision making. This is the same language that the Seventh Circuit has repeatedly described as "meaningless boilerplate" because it "yields no clue to what weight the [ALJ] gave the testimony" and fails to link the conclusory statements made with the objective evidence in the record. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). "However, the simple

fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013). The Court is not persuaded that the ALJ's use of this boilerplate language is grounds for reversal in this case. Rather, the Court finds that the reasons provided by the ALJ for rejecting Plaintiff's credibility are legally insufficient and not supported by substantial evidence.

First, the ALJ discounted Plaintiff's reports of disabling symptoms on the basis that the alleged limitations are not supported by the objective evidence. (R. at 53). Lack of objective evidence to fully support allegations is not a legitimate basis for rejecting a claimant's credibility. *See* SSR 96-7p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)).

Second, the ALJ's dismissal of Plaintiff's credibility based on his daily activities is not supported by substantial evidence. Plaintiff testified that he occasionally goes food shopping with his wife, tries to walk on a treadmill to loosen up (R. at 21), and tries to push himself to cut the lawn. (*See* R. at 53). Plaintiff testified that he cannot sit very long, and he cannot stand very long. (R. at 18). During the hearing, he had to stand up during the medical expert's testimony. (R. at 12). The ALJ does not explain how the daily activities described by Plaintiff undermine Plaintiff's credibility. While it is permissible for an ALJ to consider a claimant's daily activities when as-

sessing credibility, the Seventh Circuit has repeatedly admonished ALJs not to place "undue weight" on those activities. *Moss*, 555 F.3d at 562; *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Further, when an ALJ does analyze a claimant's daily activities, the analysis "must be done with care." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Here, the ALJ did not adequately explain how Plaintiff's ability to perform limited household activities evinces an ability to perform full-time work. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."). While the nature of personal activities is such that one can often readily attain accommodations, the modern workplace is far less forgiving. *See Bjornson v. Astrue*, 671 F.3d at 647 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.").

Moreover, the ALJ primarily bases his credibility determination on the fact that Plaintiff "started his own plumbing business but closed the business when he

learned it would affect his union pension." (R. at 53). As an initial matter, it is not clear from Plaintiff's testimony that he had already started his own plumbing business, and there is no evidence in the record that he was able to maintain such a business. Regardless, the ALJ fails to connect the dots between Plaintiff's failure to open a business, and his conclusion that Plaintiff is not credible regarding his alleged impairments. In essence, the ALJ does not explain how Plaintiff's decision not to start his own plumbing company somehow shows that his alleged symptoms are overstated or contradict his alleged pain. *See Villano*, 556 F.3d at 562 ("Although [the ALJ] briefly described [claimant's] testimony about her daily activities, [the ALJ] did not, for example, explain whether [claimant's] daily activities were consistent or inconsistent with the pain and limitations she claimed.").

The Court finds the ALJ's credibility determination "patently wrong." *Craft*, 539 at 678. On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence.[6] *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).[7]

---

[6] Plaintiff also argues that the ALJ failed to consider the side effects of his medication. On remand, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

[7] Plaintiff also appeals the ALJ's RFC determination. Because the Court is remanding the case to reevaluate the weight to be given to the treating physician's opinion and the degree of credibility to be awarded Plaintiff's testimony, the RFC will necessarily need to be reconsidered in light of the Court's opinion. Therefore, the Court will not address the parties' RFC arguments.

## C. Summary

In sum, the ALJ has failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth herein, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate the weight to be afforded Dr. May's assessment. The ALJ shall also reassess Plaintiff's credibility with due regard for the full range of medical evidence. The ALJ shall then reevaluate Plaintiff's physical impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. Finally, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

# VI. CONCLUSION

For the reasons stated above, Wiley's request to reverse the ALJ's decision and remand for additional proceedings is **GRANTED**. Defendant's Motion for Summary Judgment [21] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: February 20, 2015

*Mary M Rowland*